OPINION OF THE COURT
 

 Memorandum.
 

 The order of the Appellate Division should be affirmed.
 

 On October 16, 1991, Anthony Romano, an undercover police officer with three years experience in the Queens Tactical Narcotics Task Force (TNT), observed defendant exchange what appeared to be drugs (later determined to be cocaine) for money with two other individuals. Romano thereupon radioed his fellow officer, Evelyn Cardenales, who was also assigned to the Queens TNT and was working with Romano that day investigating illegal drug trafficking, as they had on many occasions in the past. Romano radioed that he had made a "positive observation” and gave a detailed description of the clothing and physical characteristics of the participants (including defendant) as well as their location. After receiving the radio call, Cardenales, who had been waiting in an unmarked car nearby acting as Romano’s backup, proceeded to the specified location and arrested defendant and the other participants. The sole issue before us is whether the People sustained their burden of proving probable cause for defendant’s arrest.
 

 Under what has come to be known as the fellow officer’s rule, a "police officer is entitled to act on the strength of a radio bulletin * * * from a fellow officer * * * and to assume its reliability”
 
 (People v Lypka,
 
 36 NY2d 210, 213). Moreover, when making a probable cause determination at a suppression hearing, a court may rely upon the hearsay testimony of the arresting officer alone since there is "no need for the People to also produce the undercover officer to support a finding of probable cause”
 
 (People v Petralia,
 
 62 NY2d 47, 52). As defendant does not dispute that Romano (the
 
 undercover/nontestifying
 
 
 *947
 
 officer) claimed to have " 'personally witnessed the defendant commit the crime’ ”
 
 (id.,
 
 at 54 [Kaye, J., dissenting]), Cardenales (the arresting/testifying officer) was justified in relying upon her fellow officer’s personal observation in arresting defendant.
 

 Defendant nevertheless contends that the content of Romano’s statement that he had made a "positive observation” failed to adequately communicate the nature of the conduct he had just observed. Cardenales testified at the suppression hearing, however, that the phrase "positive observation” was commonly used among police officers to indicate an exchange of drugs for money and that she understood it to mean that Romano had personally witnessed such an exchange at the time. In
 
 People v Maldonado
 
 (86 NY2d 631), this Court upheld a probable cause determination based on an undercover officer’s radio call reporting a "positive buy” on the ground that since the arresting officer "interpreted 'positive buy’ to mean that narcotics had been sold,” the "arresting officer could reasonably believe * * * that defendant had sold narcotics to the undercover”
 
 (id.,
 
 at 636). That analogy applies with equal force here and mandates rejection of defendant’s challenge to the sufficiency of the content of the radio call.
 

 Defendant’s attempt to distinguish the present case from
 
 Maldonado
 
 on the ground that it involves a police officer’s mere
 
 observation
 
 of a drug transaction and not the purchase of narcotics by the undercover officer followed by an arrest or "buy and bust”
 
 (see, Maldonado,
 
 86 NY2d at 636) can also be rejected. That Romano observed defendant engaging in a drug transaction as opposed to actually participating in it himself does not alter the fact that the personal observations of an experienced undercover officer such as Romano of the exchange of drugs for money, standing alone, establishes probable cause as an "[e]xchange of currency negates all but the most implausible explanations for the transaction, and thus conveys more than sufficient indicia of a drug sale to warrant an arrest”
 
 (People v McRay,
 
 51 NY2d 594, 604).
 

 Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Smith, Levine and Ciparick concur.
 

 Order affirmed in a memorandum.